```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                      WESTERN DIVISION
```

UNITED STATES OF AMERICA

VERSUS                              CRIMINAL NO. 5:10-cr-14-DCB-FKB

ELVIS D. PRATER and
DEWAYNE D. JOHNSON                                        DEFENDANTS

## ORDER DENYING MOTION TO DISMISS

This cause comes before the Court on Defendant Elvis D. Prater's Motion to Dismiss for Government's Spoliation of Evidence [docket entry no. 36]. Defendant Johnson has also joined in that motion [docket entry no. 42]. Having carefully considered said Motion, Responses thereto, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

Defendant Prater, an officer of the Natchez Police Department ("NPD") was indicted on August 18, 2010 for two counts of deprivation of rights under color of law in violation of 18 U.S.C. § 242 and one count of making false statements to the Federal Bureau of Investigation ("FBI") in violation of 18 U.S.C. § 1001. Co-Defendant Dewayne E. Johnson, also an NPD officer, was charged in that same indictment with two counts of deprivation of rights under color of law, two counts of making false statements, and one count of conspiracy to commit identity theft, access device fraud, and bank fraud, in violation of 18 U.S.C. § 371.

The indictments arose out of the Defendants' arrest of

brothers J.E. and J.D.E on May 23, 2009 for public drunkenness, disorderly conduct, and simple assault on a police officer. After the arrests, the officers allegedly put the brothers in two separate patrol cars, with Prater taking custody of J.D.E. and Johnson taking custody of J.E. Prater then allegedly physically assaulted J.D.E. while he was restrained in the back seat of Prater's patrol car. At that same time, Johnson allegedly stole credit and debit cards from J.E. while J.E. was under arrest in Johnson's patrol car. Prater then rejoined Johnson and allegedly physically assaulted J.E. while Johnson looked on. Johnson later allegedly conspired with his cousin, Patricia Wilson, to use J.E.'s credit and debit cards for personal purchases. During the course of an investigation into the incidents, both Prater and Johnson allegedly made false statements to FBI investigators.

The arrests of J.E. and J.D.E. occurred in downtown Natchez, Mississippi, not far from the United States Courthouse. Believing the Courthouse surveillance cameras may have captured video of the activity that led to the arrests, an investigator in the Mississippi Attorney General's Office ("MAGO"), which was then investigating the alleged beatings, requested access to the Courthouse surveillance footage from the United States Marshals Service. The written request for the surveillance video is dated May 28, 2009, five days after the arrests and alleged beatings of J.E. and J.D.E. Just over two months later, the MAGO investigator

drafted a memo to the investigation file noting that the Marshals Service had informed him that the video system at the Natchez Courthouse records over its footage every two weeks and because of administrative delays within the Marshals Service, the video for the relevant hours on May 23, 2009 had been destroyed.

Defendants now move to dismiss the indictment because of the Government's alleged spoliation of the surveillance video.  In the alternative, Defendants move to instruct the jury that it may draw an adverse inference against the Government with respect to what the video footage would have shown.  In his Reply, Defendant Prater asserts, for the first time, that the loss of the video constitutes a due process violation under either <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) or <u>Arizona v. Youngblood</u>, 488 U.S. 51 (1988).

I.   Relevant Facts

The Court held an evidentiary hearing on February 22, 2011 at which Michael Bounds, Senior Inspector for the United States Marshals Service in Jackson, Mississippi, testified.  Marshal Bounds testified that he is the only employee of the Marshals Service for the Southern District of Mississippi who is authorized to retrieve video footage from Courthouse surveillance cameras and that he is authorized to do so only for reasons related to Courthouse security.  Accordingly, Marshal Bounds testified that he was not authorized to retrieve and review footage from the Natchez Courthouse in response to the request from the MAGO investigator.

When Marhsal Bounds received the request, he wrote a letter to the headquarters for the Marshals Service in Arlington, Virginia requesting permission to retrieve the video.  Though Marshal Bounds testified that he promptly requested authority from headquarters, he neglected to preserve the footage from the Natchez Courthouse while he waited for approval.  Because the Natchez Courthouse footage records over itself every two weeks, by the time Marshal Bounds received approval from headquarters to retrieve the May 23, 2009 footage, it had been erased.  Marshal Bounds testified that he did not review the footage before it was erased.

With regard to what the footage may have shown, attorneys questioned Marshal Bounds as to whether the Courthouse cameras may have captured the pre-arrest activity that occurred near the corner of Main and Pearl Streets during the early morning hours of May 23, 2009.  Marshal Bounds testified that the Courthouse, whose front entrance is located on Pearl Street about one-half block from Main Street, has a "tilt and zoom" camera mounted to capture footage of its front entrance.  That camera's default position captures only the front entrance on Pearl Street and would not capture activity near the corner of Main and Pearl Streets unless one of the security officers inside the Courthouse manually tilted it.  Because there were no security officers at the Courthouse in the early morning hours of May 23, 2009, Marshal Bounds testified that the Pearl Street camera likely had not captured the pre-arrest

activity that occurred approximately one-half block from the Courthouse. He further testified that there were no other cameras at the Natchez Courthouse that could have captured activity at or near the corner of Main and Pearl Streets.

II. Analysis

    A.   <u>Spoliation</u>

Spoliation is defined as "the intentional destruction, mutilation, alteration, or concealment of evidence." BLACK'S LAW DICTIONARY 1409 (7th ed. 1999). As indicated by the definition's inclusion of the word intentional, a finding of spoliation requires evidence of bad faith. E.g., <u>U.S. v. Wise</u>, 221 F.3d 140, 156 (5th Cir. 2000)(holding district court did not err in refusing to instruct jury on spoliation where there was no evidence that government acted with bad faith); <u>U.S. v. Livingston</u>, 243 Fed.Appx. 37 (5th Cir. 2007) (same, citing <u>Wise</u>). On the evidence developed in the evidentiary hearing, there is no basis for a finding that the Government acted in bad faith with respect to the Courthouse surveillance video. First, the MAGO investigator requested access to the video only days after the arrests of J.E. and J.D.E., indicating that the Government acted quickly to preserve potential evidence. Second, the video was recorded over pursuant to the regular policy of the Marshals Service and thus there is no evidence that the destruction of the video was intended, either by the Marshals Service or by the MAGO, FBI, or U.S. Attorney.

5

Indeed, even if the MAGO investigator, the FBI, or the Marshals Service were negligent in failing to make sufficient efforts to secure the video, negligence is less than the bad faith required to find spoliation.

In this regard, the facts surrounding the loss of the video are similar to those of Wise, where the FBI failed to secure the computer of a relevant witness before the witness downloaded new software that erased potentially relevant information on the computer.  221 F.3d at 156.  In affirming the district court's denial of an adverse inference instruction, the Fifth Circuit noted that the Government had not destroyed the witness's computer but rather the witness himself, the owner of the computer, had made a personal decision to install a new computer program which then led to potential evidence being destroyed.[1]  Id.  It is also significant that, as Marshal Bounds testified, the Courthouse cameras likely did not capture video relevant to the events alleged in the indictment which occurred at the corner of Main and Pearl Streets.  For this reason, even if there were evidence of bad faith by the Government, it is unlikely that the remedy would be so

---

[1] Defendants assert that because the Marshals Service is a branch of the Department of Justice, the actions of its agents should be attributed to the prosecution.  As will be discussed in more detail regarding the due process claim, the Marshals Service is akin to a third-party witness here because there is no indication that it played any role in the investigation or prosecution of the crimes at issue.

extreme as dismissal of the indictment. See <u>Silvestri v. General Motors Corp.</u>, 271 F.3d 582 (4th Cir. 2001) (holding district court must consider both egregiousness of alleged spoliation and its prejudicial effect to the other party in determining appropriate remedy).

    B.    <u>Due Process</u>

With respect to a due process claim, "[f]ailure to preserve *material exculpatory* evidence violates due process rights irrespective of whether the government acted in good faith or bad faith. However, failure to preserve merely *potentially useful* evidence does not constitute a denial of due process absent a showing of bad faith." <u>United States v. McNealy</u>, 625 F.3d 858, 868 (5th Cir. 2010) (emphasis added) (citing, *inter alia*, <u>Illinois v. Fisher</u>, 540 U.S. 544, 547 (2004) and <u>Arizona v. Youngblood</u>, 488 U.S. 51, 57-58 (1988)). Though Defendants suggest, in conclusory fashion, that the Courthouse video was exculpatory, there is nothing to support this assertion. Defendants argue only that "it is believed that the location and position of the camera was able to record the attack on the police officer." [Docket entry no. 37 at 2]. Defendants never viewed the video and there is no evidence that the Government did either, since Marshal Bounds testified that he was the only person with access to the video footage and that it was erased before he attempted to view it. Indeed, Marshal Bounds' testimony indicates there likely was nothing at all on the video.

Accordingly, the video is at most potentially useful evidence whose destruction is not a due process violation unless the Government acted in bad faith.  <u>Youngblood</u>, 488 U.S. at 57-58.

Defendants assert, without citation, that the Marshals Service is "the Government" and therefore had constitutional obligations with regard to the preservation of the Courthouse surveillance video.  But it is mere happenstance that the arrests of J.E. and J.D.E. occurred within sight of a federal courthouse such that a federal law enforcement agency, rather than an ordinary citizen, may have had potentially relevant evidence.  There is no evidence that the Marshals Service was involved in the investigation of the alleged crimes at issue here and thus its role is more akin to that of a third-party witness.  <u>Cf</u>. <u>Avila v. Quartermain</u>, 560 F.3d 299, 308 (5th Cir. 2009) (whether an individual is a member of the "prosecution team" for <u>Brady v. Maryland</u> analysis must be decided on a case-by-case basis, depending on the role the individual actually played in the investigation and prosecution).  In any event, for purposes of this Motion only, the Court will assume that the Marshals Service is "the Government."[2]

Even with that assumption, the Court must deny Defendants' Motion because, as discussed above regarding spoliation, there was no bad faith on the part of the Marshals Service or the MAGO

---

[2] The MAGO investigator was clearly part of the prosecution team, however.

investigator and thus no due process violation.  The circumstances surrounding the Courthouse video are similar to those in United States v. Moore, 452 F.3d 382, 389 (5th Cir. 2006), in which the Fifth Circuit upheld the district court's denial of a due process claim where the Bureau of Prisons ("BOP") had erased audiotapes of telephone conversations of an inmate charged with arranging heroin sales while in prison.  The BOP had recycled the audiotapes in good faith pursuant to its own internal policy thus, under Youngblood, there was no due process violation. Id.; see also United States v. McClure,918 F.2d 967 (4th Cir. 1990) (decision of FBI agent investigating bank robbery not to obtain copy of bank video that showed the robbery was "regrettable" but not a due process violation, though the bank later erased the video); McCargo v. Costello, 235 F.Supp.2d 173 (E.D.N.Y. 2002) (holding no constitutional violation where police officers failed to obtain copy of surveillance video from 7-Eleven that might have shown alleged robbery and video was later erased pursuant to regular practice of 7-Eleven).

Accordingly, because there is no evidence that the Government acted in bad faith with respect to the Courthouse surveillance video, neither dismissal of the indictment nor an adverse inference instruction is warranted.

**IT IS HEREBY ORDERED** that Defendant Prater's Motion to Dismiss for Government's Spoliation of Evidence [docket entry no. 36] is

**DENIED.**

    **SO ORDERED AND ADJUDGED** this the 2nd day of March 2011.


                                                  <u> s/ David Bramlette   </u>

                                                  **UNITED STATES DISTRICT JUDGE**